No. 22-1890

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 for the 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

## APPLE INC.,

*Appellant,*

*v.*

## MASIMO CORPORATION,

*Appellee.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD IN NO. IPR2020-01523

## APPLE INC.'S REPLY BRIEF

Lauren A. Degnan
W. Karl Renner
Christopher Dryer
FISH & RICHARDSON P.C.
1000 Maine Ave., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com

Michael J. Ballanco
Laura E. Powell
FISH & RICHARDSON P.C.
1000 Maine Ave., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070

February 8, 2023

*Attorneys for Appellant Apple Inc.*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant Apple Inc. ("Apple") certifies the following:

1.  Provide the full names of all entities represented by undersigned counsel in this case.

    **Apple Inc.**

2.  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

    **Apple Inc.**

3.  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

    **None**

4.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

    **Fish & Richardson P.C.: Daniel D. Smith, and Kim H. Leung**

5.  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

    ***Masimo Corporation, et al. v. Apple Inc.,***
    **Case No. 8:20-cv-00048 (C.D. Cal.)**

    ***Apple Inc. v. Masimo Corporation,***
    **Case No. 22-1891 (Fed. Cir.)**

6.      Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated:   February 8, 2023        */s/ Lauren A. Degnan*
                                          Lauren A. Degnan

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................. vi

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 2

I.     MASIMO REPEATS THE BOARD'S ERROR OF
INSERTING PREFERRED EMBODIMENT LIMITATIONS
INTO THE "PROCESSING CHARACTERISTICS"
CONSTRUCTION, IN SPITE OF THE CLAIM LANGUAGE ................... 2

     A.     Masimo Ignores the Plain Claim Language Compelling
Reversal of the Board's Limiting Construction ................................... 2

         1.     Independent Claim 1 Does Not Limit Processing
Characteristics ............................................................ 2

             a.     Claim 1 Requires "Signals"—Not
"Processing Characteristics"— To Come
from "One or More Light Detectors" ............................ 2

             b.     Apple Properly Applies the Plain Meaning
of "Processing Characteristics" ...................................... 5

         2.     Dependent Claim 4 Narrows "Processing
Characteristics" with the Light-Detector
Limitation, Not Claim 1 ............................................. 8

         3.     Dependent Claim 8 Confirms "Processing
Characteristics" Cannot Be Limited to Light
Sensor Signals .......................................................... 11

     B.     The Specification Does Not Support Limiting the
Claim's "Processing Characteristics" ................................................. 13

         1.     Absent Lexicography or Disavowal, Importing the
Board's Light-Detector Limitation into
"Processing Characteristics" Is Legally Improper ................... 13

2.     The '703 Patent's Description of Preferred Embodiments Does Not Redefine "Processing Characteristics" To Include the Light-Detector Limitation ................................................................................ 14

3.     The Specification's Discussion of Goals of the Alleged Invention Does Not Redefine "Processing Characteristics" ........................................................................ 15

II.   THE BOARD ERRED BY FAILING TO PROPERLY CONSIDER WHETHER DIAB'S REDUCED NO-MOTION SIGNAL PROCESSING RENDERS TRANSITIONING BETWEEN POWER CONSUMPTION LEVELS OBVIOUS ................... 18

A.    Masimo Fails To Rebut Apple's Obviousness Theory ...................... 19

1.     Masimo Never Disputes the Facts Establishing Apple's Obviousness Argument ............................... 19

2.     Masimo Offers No Reason Why These Facts Do Not Establish Obviousness .................................... 22

a.     The Facts Compel a Finding of Obviousness Under *KSR* ................................... 22

b.     The Board Did Not Address Motivation To Combine in the Context of Apple's Unaddressed, Partial-Suspension Obviousness Arguments ............................... 24

B.    Apple Did Not Limit Its Obviousness Case to Suspending Diab's Entire Motion Artifact Suppression Module ................................................................................ 26

1.     Apple's Petition: The Combination Would Reduce Processing and Thus Power Consumption When No Motion Is Detected ............................................. 26

2.     Apple Properly Responded to Masimo's Arguments by Clarifying that the Motion Artifact Suppression Module Need Not Be Suspended Entirely ...................................................... 28

iv

C.    Apple Did Not Rely on Inherency .......................................................31

CONCLUSION ...................................................................................... 33

CERTIFICATE OF SERVICE AND FILING ...................................................... 34

CERTIFICATE OF COMPLIANCE ........................................................................ 35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ........................................................6, 7

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007) .............................................................9

*Apple Inc. v. Andrea Elecs. Corp.*,
  949 F.3d 697 (Fed. Cir. 2020) ...................................................28, 31

*Apple v. Wi-Lan Inc.*,
  25 F.4th 960 (Fed. Cir. 2022) ...........................................................13

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
  908 F.3d 792 (Fed. Cir. 2018) .......................................................7, 14

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
  709 F.3d 1348 (Fed. Cir. 2013) .........................................9, 10, 11, 12

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ...................................................10, 11

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*,
  998 F.3d 1320 (Fed. Cir. 2021) ...........................................................7

*Brookhill-Wilk I LLC v. Intuitive Surgical Inc.*,
  326 F.3d 1215 (Fed. Cir. 2003) .........................................................17

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) .................................................28, 30

*Chamberlain Grp. v. One World Techs., Inc.*,
  944 F.3d 919 (Fed. Cir. 2019) ...........................................................28

*Cioffi v. Google, Inc.*,
  632 F. App'x 1013 (Fed. Cir. 2015) ...................................................10

*Comput. Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008) ..........................................................16

*Cont'l Cirs., LLC v. Intel Corp.*,
    915 F.3d 788 (Fed. Cir. 2019) ............................................................14

*Digital Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998) ............................................................2

*E-Pass Techs., Inc. v. 3Com Corp.*,
    343 F.3d 1364 (Fed. Cir. 2003) ..........................................................16

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) .......................................................9, 10

*Gillette Co. v. Energizer Holdings, Inc.*,
    405 F.3d 1367 (Fed. Cir. 2005) ............................................................5

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014) ............................................................8

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
    902 F.3d 1372 (Fed. Cir. 2018) .......................................................3, 4

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
    690 F.3d 1318 (Fed. Cir. 2012) ............................................................7

*In re Keller*,
    642 F.2d 413 (CCPA 1981) ................................................................33

*Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*,
    554 F.3d 1010 (Fed. Cir. 2009) ..........................................................15

*KSR International Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)...........................................................22, 23, 26

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*,
    687 F.3d 1377 (Fed. Cir. 2012) .......................................................5, 6

*Medicines Co. v. Mylan, Inc.*,
    853 F.3d 1296 (Fed. Cir. 2017) ..........................................................15

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
  764 F.3d 1392 (Fed. Cir. 2014) ....................................................9, 10

*Nelson v. Adams USA, Inc.*,
  529 U.S. 460 (2000) .........................................................................30

*Par Pharm., Inc. v. TWI Pharms., Inc.*,
  773 F.3d 1186 (Fed. Cir. 2014) ........................................................31

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..........................................9

*In re Power Integrations, Inc.*,
  884 F.3d 1370 (Fed. Cir. 2018) ..........................................................7

*Retractable Technologies, Inc. v. Becton, Dickinson & Co.*,
  653 F.3d 1296 (Fed. Cir. 2011) ..........................................................4

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*,
  806 F.3d 1356 (Fed. Cir. 2015) ........................................................13

*Thorner v. Sony Comput. Ent. Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ........................................................14

*Toshiba Corp. v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012) ........................................................15

*Trustees of Columbia University in City of New York v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016) ..................................................13, 14

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) ........................................................13

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
  683 F.3d 1356 (Fed. Cir. 2012) ........................................................30

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
  465 F.3d 1312 (Fed. Cir. 2006) ........................................................16

**Other Authorities**

37 C.F.R. § 42.23(b) .........................................................................28

## <u>INTRODUCTION</u>

This Court should correct the Board's claim construction and obviousness errors. The Board's construction of "processing characteristics" improperly reads a limitation from the specification into the claims. The claims as written broadly encompass any "processing characteristics," regardless of their source, and dependent claims confirm that the term includes ***both*** characteristics derived from signals coming from a light detector and derived from other information. The specification contains no lexicography or disavowal supporting a narrower interpretation, and it is insufficient that the '703 patent's embodiments derive processing characteristics from light detector signals. Masimo's attempt to narrow the claims it drafted broadly should therefore be rejected.

On obviousness, the Board erred by rigidly confining its analysis to whether a skilled artisan would ***entirely*** suspend Diab's motion artifact suppression module when no motion is detected, improperly disregarding Apple's separate argument that it would have been straightforward and obvious to suspend at least the ***components*** of that module dedicated to suppressing motion artifacts when there is no motion, and thus no artifacts. Unable to rebut the merits of this alternative argument, Masimo instead argues that Apple never raised it below. But the record shows Apple repeatedly presented this theory to the Board and permissibly clarified it in response to Masimo's arguments. The Board's claim construction

and obviousness errors should be corrected and its judgment set aside.

## ARGUMENT

## I. MASIMO REPEATS THE BOARD'S ERROR OF INSERTING PREFERRED EMBODIMENT LIMITATIONS INTO THE "PROCESSING CHARACTERISTICS" CONSTRUCTION, IN SPITE OF THE CLAIM LANGUAGE

### A. Masimo Ignores the Plain Claim Language Compelling Reversal of the Board's Limiting Construction

#### 1. Independent Claim 1 Does Not Limit Processing Characteristics

##### a. Claim 1 Requires "Signals"—Not "Processing Characteristics"— To Come from "One or More Light Detectors"

Masimo does not dispute that the intrinsic record controls in this case.

"Even within the intrinsic evidence, however, there is a hierarchy of analytical

tools" and "*[t]he actual words of the claim are the controlling focus*." *Digital*

*Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998).[1]  Masimo

tellingly avoids this framework, prioritizing preferred embodiments plucked from

the specification over the claim language.  *Compare* RB 32-39 (discussing

preferred embodiments), *with id.* at 39-51 (discussing claim language).

Independent claim 1 is quite clear.  Among other things, the method

"receiv[es] *one or more signals from one or more detectors configured to detect*

---

[1] All emphasis is added unless noted otherwise.

*said light*" and "compar[es] processing characteristics to a predetermined threshold." Appx59 (11:37-47). The first of these limitations specifies that the signal must be received from a light detector. In stark contrast, the limitation introducing "processing characteristics" is agnostic regarding how those characteristics originate.

This juxtaposition of the two limitations within the same claim strongly suggests that "processing characteristics" are not limited by light detector signals. It also dispels one of Masimo's main arguments—that, in the '703 patent, processing characteristics must come from a light detector. *See, e.g.*, RB 32-39. If that were so, the same would be true of the "one or more signals" in the "receiving" limitation because, as Masimo mentions, the written description discusses signals coming from only light detectors. *See, e.g.*, Appx59 (11:37-39); RB 35. Nevertheless, Masimo drafted the receiving limitation to specify that the signals come from light detectors. Had it sought to impose that limitation upon the "processing characteristics" limitation, Masimo would have likewise included this same language there (during prosecution).

Masimo attempts to cabin *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372 (Fed. Cir. 2018)—which explains that using restrictive language for one claim "shows that the patentee knew how to restrict" the claims, *id.* at 1379— as pertaining to only situations where different **claims** in the same patent are being

contrasted, rather than different **limitations** within one claim, like here.  RB 44.

However, *Intellectual Ventures* does not restrict its holding in this way, and its

logic is even more compelling here, where Masimo used the phrase "from one or

more detectors configured to detect said light" in the very same claim as

"processing characteristics."

    *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296

(Fed. Cir. 2011), is inapplicable.  *Contra* RB 43, 45.  In *Retractable*, the Court

construed "body" as requiring a one-piece structure—but only because the patent

specifically framed its invention as overcoming the disadvantage of prior-art multi-

structure bodies.  653 F.3d at 1305.  *Retractable* recognizes that "[t]here is a fine

line between construing the claims in light of the specification and improperly

importing a limitation from the specification into the claims."  *Id.*  That line was so

fine in *Retractable* that the panel split over the construction of "body."  *Id.* at 1312

(Rader, C.J., dissenting).  This case falls on the other side of the line.  As detailed

below, nothing in the written description suggests that using light detectors to

derive "processing characteristics," rather than other means, is the '703 patent's

point of novelty, nor does it criticize alternative ways to derive processing

characteristics.  *See infra* Arg. Sec.I.B.

    Masimo misapprehends Apple's argument regarding claim 1's use of

"comprising."  RB 44.  Apple's position is that, although claim 1 recites receiving

signals from a light detector, it does not preclude processing signals received other ways. The *Gillette* decision Masimo cites supports Apple's argument: "[T]he transition 'comprising' creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1372 (Fed. Cir. 2005) (quotations omitted). *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377 (Fed. Cir. 2012), quotes the same language, and thus also supports Apple's argument. *Id.* at 1383.

### b.     Apple Properly Applies the Plain Meaning of "Processing Characteristics"

Apple has consistently applied the same plain-meaning understanding of "processing characteristics" throughout this case. *Contra* RB 40-43. Apple's petition states that "the plain meaning of 'processing characteristics' includes characteristics or features obtained from or used for processing information." Appx119. Apple reiterated this position in its reply, RB 40 (quoting Appx1683; Appx1707), and at the hearing, *see* Appx1883 (reproducing hearing demonstrative Appx119). The real dispute was whether Apple argued that the plain meaning of "processing characteristics" lacks any requirement that the characteristics are determined from a light detector signal. Appx1683. At the hearing, Apple urged the Board to reject Masimo's gloss on the claim language, asking "[w]hat's wrong with plain meaning?" Appx2017 (20:9-14). Apple continued that, under its plain

terms, processing characteristics "enable[] processing" or are "yielded from processing" and anything more would improperly read limitations into the claim. *Id.*[2]

Masimo's is wrong that Apple needed to provide affirmative evidence of the plain meaning. RB 41. Indeed, the case law is to the contrary. For example, in *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012), the plaintiff attempted to read limitations from the specification into two claim terms. *Id.* at 1325. The district court "declin[ed] to adopt [plaintiff]'s construction," instead assigning "the terms their plain and ordinary meaning," without further interpretation. *Id.* Rejecting the plaintiff's argument that the district court abdicated its obligation to construe the claims, this Court held that the "proposed construction erroneously reads limitations into the claims and the district court properly rejected that construction and resolved the dispute between the parties" by "concluding that these terms have plain meanings that do not require additional construction." *Id.* at 1326. Importantly, this Court affirmed that

---

[2] Masimo's claim that Apple sought two different constructions does not accurately reflect the record. Rather, Apple argued that certain prior art would read on the "processing characteristics" limitation even under a narrower construction. Appx118 (citing Appx402-403 (¶97)).

construction without requiring the proponent to present evidence establishing the plain meaning.[3]

Masimo criticizes Apple's plain-meaning construction because it covers large amounts of processed information. RB 42 (citing Appx14). To the extent that is even a legitimate concern (which Apple disputes), it is one of Masimo's own making. "Inventors are masters of their claims, and the words they use to describe and claim their invention are decisive and binding." *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1331 (Fed. Cir. 2021). Masimo chose the broad term "processing characteristics." The cases Masimo cites do not rest on the breadth of a term's plain meaning. Rather, the Court in each case rejected constructions that went ***outside*** of the plain claim language to broaden the claims. *See In re Power Integrations, Inc.*, 884 F.3d 1370, 1375-76 (Fed. Cir. 2018) (rejecting construction coming "exclusively" from an extrinsic dictionary definition, counter to the claim's "plain terms"); *Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 797-98 (Fed. Cir. 2018) (rejecting construction pulling from the specification). Here, the plain claim language itself is broad, which is not a basis for narrowing the term. *See InterDigital Commc'ns, LLC v. Int'l Trade*

---

[3] The terms at issue in *ActiveVideo*—"superimposing the first indication over the display of the first anchor channel" and "including with the first indication a second indication"—appear far less likely to have a plain meaning than "processing characteristics."

*Comm'n*, 690 F.3d 1318, 1325 n.1 (Fed. Cir. 2012) ("[M]odifiers will not be added to broad terms standing alone.").

Masimo faults Apple's plain-meaning construction because "Apple has identified no embodiment in the '703 patent that compares 'processing characteristics' that are not determined from a detector configured to detect light." RB 43.  But "the scope of the claims is not generally limited to the embodiments disclosed in the patent." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1381 (Fed. Cir. 2014).  The question is therefore not whether the specification includes a specific example covering broad claim language, but whether the specification necessarily limits otherwise broad claim language to a particular embodiment.  Such limitations may occur only in the case of disavowal and lexicography, neither of which exists here.  *See infra* Arg. Sec.I.B.

### 2. Dependent Claim 4 Narrows "Processing Characteristics" with the Light-Detector Limitation, Not Claim 1

Dependent claim 4 explicitly provides that the "processing characteristics" come from light detectors:  "The method of claim 1, wherein ***said processing characteristics comprise signal characteristics <u>from one or more light sensitive detectors</u>*.**"  Appx59 (11:59-61).  Independent claim 1 is broad and open-ended, agnostic as to where the processing characteristics come from.  Dependent claim 4 narrows the claim to require that the processing characteristics "comprise signal characteristics from one or more light sensitive detectors."  Appx59 (11:59-61).

If the Board and Masimo's construction were correct, claim 4's explicit would be wholly duplicative:

> 4. The method of claim 1, wherein said ~~processing characteristics~~ processing characteristics determined from a signal received from one or more detectors configured to detect light comprise signal characteristics from one or more light sensitive detectors.

BB 17 (citing Appx59 (deletion in strike-through, additions underlined)).

Although Masimo characterizes this as merely "***overlap***" between the claims,[4] it acknowledges there is duplication: "[a]t most . . . the clause 'from one or more light sensitive detectors' in claim 4 [is] ***duplicative***." RB 46-47.

Masimo's inability to rectify the light-detector limitation with claim 4 without surplusage shows why its construction is wrong. "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). Because the Board's construction results in superfluous language, it is not correct. *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1310 (Fed. Cir. 2014); *see also Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 764 F.3d 1392, 1399 (Fed. Cir. 2014); *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1356-57

---

[4] Masimo's averment that there is often overlap between patent claims is inapplicable here. RB 46. *Andersen Corp. v. Fiber Composites, LLC,* 474 F.3d 1361, 1370 (Fed. Cir. 2007), concerns overlap between distinct groups of claims across several patents, not claims with a dependency relationship.

(Fed. Cir. 2013); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).

Masimo cannot readily distinguish the relevant authority, particularly *Cioffi v. Google, Inc.*, 632 F. App'x 1013 (Fed. Cir. 2015) (nonprecedential). *Cioffi* rejects Masimo's apparent argument that, if a dependent claim includes other limitations making it not wholly duplicative of the independent claim, there is no issue. Instead, *Cioffi* held that, as long as a dependent claim ***limitation*** "would be entirely duplicative" of an independent claim limitation if construed in a certain manner, then the dependent claim "gives rise to a presumption that [the independent claim] lacks such a limitation." *Id.* at 1019. Masimo's retort to *Cioffi* is that the intrinsic record in that case did not otherwise tip the scale in favor of limiting the construction despite the claim differentiation. Yet as detailed below, *see infra* Arg. Sec.I.B, the same is true here; the patent includes no lexicography or disavowal permitting the Board, under the guise of claim construction, to redraft the inherently broad "processing characteristics" term.

Masimo never distinguishes *Mformation*, 764 F.3d at 1399, or *GE Lighting*, 750 F.3d at 1310. Regarding *Bicon*, 441 F.3d at 950, and *Aristocrat*, 709 F.3d at 1357, Masimo asserts that they do not apply because "Board's construction does not read any limitation out of the claim." RB 46. Putting aside Masimo's incorrect characterization of these cases as applicable only where a limitation is being read out of a claim, the Board's construction here vitiates claim 4's requirement that

"processing characteristics comprise signal characteristics *from one or more light sensitive detectors*" because it makes that same limitation inherent to "processing characteristics." Thus, this limitation would be rendered superfluous, and *Bicon*'s instruction that "claims are interpreted with an eye toward giving effect to all terms in the claim," 441 F.3d at 950, squarely applies. Further, the situation in *Aristocrat* was substantively indistinguishable because the rejected construction of "awarding" to include "identifying" would have rendered the method step "identifying" duplicative. 709 F.3d at 1348.

### 3. Dependent Claim 8 Confirms "Processing Characteristics" Cannot Be Limited to Light Sensor Signals

Dependent claim 8 recites that "said processing characteristics include *determining an estimate of current power consumption* and comparing said estimate with a target power consumption." Appx59 (cl. 8). This power consumption estimate does not come from a light detector, demonstrating error with the Board's construction. Appx45.

Masimo presents a convoluted path through several layers of processing to argue that the power status calculator 460's generated value is somehow based on a signal from the light detector. RB 48-51. Yet, Masimo leaves unanswered how the "control state input 442" (red in Appx1685) that the "control engine 440" sends "power status calculator 460" (purple in Appx1685) *necessarily* corresponds to a signal received from the front-end light detector 490, relying instead on a

11

speculative path where a heavily processed version of the light signal from detector 490 may reach power status calculator 460. *See* Appx1685 (citing Appx46).

According to Masimo, "[t]he signal status calculator 450 [] provides the signal status output 452 to the control engine 440." RB 49 (citing Appx56 (6:49-51)). "The power status calculator 460" then uses the control state input 442, which indicates the current state of the control engine 440, "to estimate the average power consumption of at least a portion of the pulse oximeter 300." *Id.* (citing Appx56 (6:42-55)). Yet, neither Masimo nor the '703 patent connects the signal status output 452, which Masimo argues derives from the light detector 490, with the control state input 442, which is claimed by claim 8. Both are in communication with the control engine 440, but that does not necessarily mean that there is a common thread connecting them and connecting the control state input 442 to the light detector. In fact, when discussing "control state input 442" the '703 patent recites that it "indicates the current state of the control engine," which does not indicate that this output is derived from any signal received at the light sensor. Appx56 (6:42-45).

Thus, the '703 patent's claim language shows that the Board erred in importing the light-detector limitation into "processing characteristics."

12

**B.    The Specification Does Not Support Limiting the Claim's "Processing Characteristics"**

Although claims are read in light of the specification, that maxim does not authorize Masimo and the Board to import the light-detector limitation into "processing characteristics." *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346 (Fed. Cir. 2015) ("A court may not import limitations from the written description into the claims." (internal quotations omitted)).

**1.    Absent Lexicography or Disavowal, Importing the Board's Light-Detector Limitation into "Processing Characteristics" Is Legally Improper**

Masimo never disputes that the intrinsic record lacks lexicography or disavowal. *See* RB 52-54; BB 24-27. Rather, Masimo incorrectly asserts that "the Board was not required to address lexicography or disavowal." RB 52-53. Masimo misinterprets *Trustees of Columbia University in City of New York v. Symantec Corp.*, 811 F.3d 1359 (Fed. Cir. 2016). Although *Columbia* stated that "[o]ur case law does not require ***explicit*** redefinition or disavowal," it did not displace the firmly entrenched precedent requiring lexicography or disavowal to import a limitation from the specification. *Id.* at 1363 (original emphasis).

That precedent has been consistently re-affirmed before and after *Columbia*. *See, e.g.*, *Apple v. Wi-Lan Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022); *Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015). So have the requirements for making a showing of lexicography or disavowal. *See Apple*,

13

25 F.4th at 967; *Cont'l Cirs., LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019).

*Columbia* does not conflict with this precedent; it merely applies the uncontroversial tenet that the specification may ***implicitly*** redefine a claim term away from its plain and ordinary meaning.  811 F.3d at 1365.[5]  However, "disclosing embodiments that all use the term the same way is not sufficient" to implicitly redefine a claim term.  *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012).  Thus, Masimo has not shown—and the Board did not find—any implicit redefinition or disavowal of the plain and ordinary meaning of "processing characteristics."  *See* RB 52-54; Appx10-14.

> ### 2.  The '703 Patent's Description of Preferred Embodiments Does Not Redefine "Processing Characteristics" To Include the Light-Detector Limitation

Focusing on Figure 4, Masimo asks this Court to limit "processing characteristics" to only those derived from light detector signals because the '703 patent's preferred embodiments all have light sensors.  RB 35-38.[6]  Yet, that would

---

[5] The same is true of *Arista*, 908 F.3d 792.

[6] Masimo also slips in a citation to its expert's declaration, stating "[t]he physiological measurement and signal statistics are examples of processing characteristics[.]"  RB 38 (citing App1375-1376).  As discussed below, the declaration cites nothing from the patent limiting "processing characteristics" to physiological measurements and signal statistics.  *See infra* Arg. Sec.I.B.3.  At most, Dr. Madisetti surmises how claim 1 reads on Figure 4's embodiment, which does not establish lexicography or disavowal.

violate this Court's claim construction precedent. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("It is not enough that the only embodiments, or all of the embodiments, contain a particular limitation." (citations omitted)).

Masimo's cases do not support a different result. In *Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*, 554 F.3d 1010, 1018 (Fed. Cir. 2009), the Court rejected a construction based on an extrinsic dictionary definition in light of one required by the intrinsic record. In *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296 (Fed. Cir. 2017), the Court held that the key embodiment reflected in its construction of "efficient mixing" was not "merely the only ***disclosed*** embodiment of efficient mixing—it is the only ***description*** of efficient mixing." *Id.* at 1309 (original emphasis). Masimo does not direct the Court to any similar statement in the '703 for "processing characteristics."[7]

### 3.    The Specification's Discussion of Goals of the Alleged Invention Does Not Redefine "Processing Characteristics"

Masimo's extended recitation of the specification's disclosure about unclaimed goals of the alleged invention also does not support importing the light-detector limitation into "processing characteristics." *See* RB 32-39.

---

[7] Masimo asserts that its alleged invention satisfied a "long-felt need," *E.g.*, BB 9-10, 33, which goes towards objective evidence of nonobviousness and is not relevant to claim construction. Further, Masimo presented no such evidence or argument to the Board. Appx15 n.1; *see* also Appx1261-1263.

For example, Masimo states that the '703 patent does not identify how to "evaluate a patient's status or the signal quality aside from evaluating the signal from the detector configured to detect light." RB 35. The challenged claims do not recite evaluating signal quality or a patient's status. Appx59 (11:32-51). Thus, Masimo's observation is irrelevant to whether "processing characteristics" must be derived from a light detector. *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1319 (Fed. Cir. 2006) ("The mere fact that [a feature is described as] one object of the invention . . . does not mean that this particular feature was adopted as a limitation in each claim.").

Masimo also asserts that the patent discloses reducing power three ways, all of which require a light sensor signal. RB 35. However, the specification introduces these options as part of "one embodiment," Appx56 (5:55-6:8), rather than teaching that all implementations of the '703 patent are confined to such an operation. Merely describing exemplary ways to accomplish the alleged invention's goal is insufficient to define a term implicitly or explicitly. *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) (counseling against limiting "claim language to exclude particular devices because they do not serve a perceived 'purpose' of the invention"); *see also Comput. Docking Station Corp. v. Dell, Inc*., 519 F.3d 1366, 1374 (Fed. Cir. 2008).

Masimo highlights the specification's discussion of other "aspects" of the disclosed pulse oximeter depending on a light sensor, including processing a signal received from an input sensor to determine whether to adjust its operation. RB 36 (citing Appx54 (2:29-33, 2:61-63)). Importantly, Masimo does not relate these "aspects" to the challenged claims, let alone the term "processing characteristics." RB 36. These disclosures, therefore, cannot redefine "processing characteristics" implicitly or explicitly. *See Brookhill-Wilk I LLC v. Intuitive Surgical Inc.*, 326 F.3d 1215-22 (Fed. Cir. 2003) (explaining disclosed objects and advantages did not limit the claimed invention).

Masimo's expert's assertion that "[t]he physiological measurement and signal statistics are examples of processing characteristics, which are determined from the signal received from the detector," RB 34 (citing App1376), does not establish lexicography or disavowal. This assertion lacks any support in the '703 patent, let alone one characterizing physiological measurements and signal statistics as "processing characteristics." Appx1375-1376 (¶47). Indeed, the written description uses "processing characteristics" only one time, Appx56 (5:22), and does not set out any examples of such "processing characteristics." Appx1375-1376 (¶47).[8] Dr. Madisetti's unsupported opinion cannot justify

---

[8] Masimo also suggests that Figure 9 provides "physiological measurements" and "signal statistics" as examples of processing characteristics. Yet, neither Figure 9

reading a limitation into the claim.

Because the specification does not contain lexicography or disavowal (explicit or implicit) limiting "processing characteristics" to a single light-sensor embodiment, this Court should reverse the Board's construction and remand so that the Board may address the Amano grounds under the correct construction.

## II.    The Board Erred by Failing To Properly Consider Whether Diab's Reduced No-Motion Signal Processing Renders Transitioning Between Power Consumption Levels Obvious

The Board independently erred by not addressing Apple's obviousness argument involving only partially suspending Diab's motion artifact suppression module.  BB 33-61.  Specifically, Apple argued that a skilled artisan would have found it obvious to modify Diab based on Amano so that motion artifact suppression processes are skipped when the system detects no motion, thus reducing power consumption.  *E.g.*, Appx84-85; Appx372-373 (¶54); Appx1689-1690; Appx2004-2005 (7:16-18, 8:17-20).  Masimo barely contests this argument on the merits, devoting the majority of its response to forfeiture.  RB 54-70.  However, Apple did more than enough to put the Board and Masimo on fair notice of its argument, which is sufficient to preserve the issue.

---

nor its associated text recites "processing characteristics," "physiological measurements" or "signal statistics."

A.     **Masimo Fails To Rebut Apple's Obviousness Theory**

1.     **Masimo Never Disputes the Facts Establishing Apple's Obviousness Argument**

Apple's obviousness argument for the "transitioning" limitation is fundamentally simple. First, Diab explicitly suggests performing reduced signal processing when no motion is present. Appx371-372 (¶53); Appx633; Appx649 (9:18-21); Appx668 (47:52-56, 48:6-11) ("If motion is not detected, spectral estimation on the signals is carried out directly *without motion artifact suppression*."). Second, a skilled artisan would know that a device performing less processing could be designed to use less power, at least some of the time, as was "well known" to a skilled artisan and explicitly discussed in Amano. *E.g.*, Appx372-379 (¶¶54-55; 61-62); Appx398-400 (¶¶91-93); Appx521 (21:50-22:6); Appx528 (35:54-64); *see also* Appx85-86; Appx1690-1695; Appx2010-2011 (13:8-14:10). Thus, a skilled artisan would have found it obvious that the modified device of Diab could use less power when no motion is detected (and more power when motion is detected), thereby transitioning between power levels. Appx372-373 (¶54); *see also* Appx84-85; Appx1507 (54:10-17); Appx1521-1522 (68:15-69:6); Appx1689-1690; Appx2004-2005 (7:16-18, 8:17-20).

Masimo does not rebut either factual premise of Apple's argument. It does not address, let alone deny, that both Diab's and Amano's express discussions of reducing signal processing when motion is not detected renders the technique

obvious.  RB 54-70.  Nor could it, as there is simply no reason to expend power suppressing artifacts resulting from motion when there is no motion to potentially cause such artifacts to begin with.  Appx371-373 (¶¶53-54); Appx528 (35:54-64); Appx668 (47:52-56, 48:6-11).

Masimo also never contended that it required more than ordinary skill to modify Diab to use less power by foregoing motion artifact suppression when no motion is present.  RB 54-70.  At most, Masimo argues that the particular "structure[]" and "configur[ation]" of Diab's system could consume "*more* power when motion [is] not detected."  RB 68-69 (original emphasis) (citing Appx1396-1397 (¶¶76-77); Appx1400-1402 (¶¶87-90)).[9]  Dr. Madisetti speculated that Diab's embodiments might use more power when no motion is detected either by processing more data overall, Appx1396 (¶76); Appx1400-1401 (¶¶87-88), or because "the algorithms utilized by Diab when 'no motion' is detected could consume more power than the algorithms utilized by Diab when motion is detected," Appx1397 (¶77); Appx1401-1402 (¶89).

Importantly, however, Dr. Madisetti never disputed Dr. Anthony's more fundamental assertions that "reducing the amount of processing by suspending

---

[9] Masimo does not explain how using more power in the absence of motion would not likewise render the "transitioning" limitation obvious.  The claim requires transitioning to a higher power consumption level based upon passing a processing characteristics threshold, which could be *either* the presence *or absence* of motion.  Appx59 (11:45-47).

operations reduces power consumption," Appx398 (¶91), and that this correlation between processing amount and power consumption was "common background knowledge recognizable to a POSITA," Appx399-400 (¶92) (citing Appx881 (10:62-65); Appx923 (¶[0103]); Appx954-955 (¶[0098]); Appx1032 (¶[0241]); Appx1083 (2:25-27); Appx1147 (1:59-61)).  Nor did Dr. Madisetti specifically disagree that it would have been "obvious and straightforward to combine Diab with Amano to manage power consumption" by reducing processing when motion is not detected.  Appx368-369 (¶50); Appx371-374 (¶¶53-55).  Rather than address a skilled artisan's ability to manage power consumption in the combination using ordinary skill, Dr. Madisetti consistently qualified his opinions as being based on using the specific "algorithms disclosed" by Diab.  Appx1774 (59:10-20); *see also* Appx1397 (¶77); Appx1401-1402 (¶89).

Thus, Dr. Anthony's opinion that saving power by reducing processing was well-known to a skilled artisan and easily adapted to the combination of Diab and Amano was ultimately unrebutted.  Appx371-379 (¶¶53-55, 61-62); Appx398-400 (¶¶91-93).[10]

---

[10] Masimo faults Apple for not citing its expert testimony in one "section" of Apple's brief, RB 65; however, Apple referred to Dr. Anthony's testimony where appropriate to establish the facts underlying its obviousness argument. *E.g.*, BB 40-43, 55-56.

### 2. Masimo Offers No Reason Why These Facts Do Not Establish Obviousness

#### a. The Facts Compel a Finding of Obviousness Under *KSR*

Masimo fails to provide any legal reason why the foregoing undisputed facts do not compel an obviousness finding. Masimo never addresses the "expansive and flexible approach" to obviousness, which *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007), demands. *See* RB 54-70.

Consequently, Masimo never reconciles Dr. Madisetti's and the Board's narrow and rigid analysis—focusing solely on the specific structure, configuration, and algorithms expressly recited in Diab, Appx1396-1397 (¶¶76-77); Appx1400-1402 (¶¶87-90); Appx1774 (59:10-20); *see also* Appx28-32—with *KSR*'s controlling legal standard, *see* BB 52-54, 58-59. Under *KSR*, the issue is not whether mechanistically disabling Diab's motion artifact suppression module would necessarily reduce power, as the Board and Dr. Madisetti suggest. Appx28-32; Appx1396-1397 (¶¶76-77); Appx1400-1402 (¶¶87-90); *see infra* Arg. Sec.I.C. Rather, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *KSR*, 550 U.S. at 417.

Here, Amano indisputably applies the well-known technique of saving power by eschewing unnecessary processing in the context of accounting for movement while processing a detected pulse wave from LED signals.  Appx372-379 (¶¶54-55, 61-62); Appx521-522 (21:3-57, 21:65-22:6); Appx528 (35:54-64). Thus, under *KSR*, obviousness turns on whether applying that same technique in the same context in the Diab-Amano combination "is beyond [a skilled artisan's] ordinary skill."  550 U.S. at 417.  The only expert testimony addressing ***that*** issue is Dr. Anthony's opinion that it would be "obvious and straightforward" to a skilled artisan.  Appx368-369 (¶50); Appx371-374 (¶¶53-55).  Thus, the only evidence-supported conclusion is that the combination renders the "transitioning" limitation obvious.  *KSR*, 550 U.S. at 417.

Indeed, the challenged claims do not require always transitioning between power levels—they are rendered obvious by any system that would do so even sometimes.  *See* BB 60-61.  Masimo does not dispute this point.  *See* RB 54-70. Thus, even if Diab's own algorithms could sometimes process more data when no motion is detected, thus using more power, *e.g.*, Appx1396 (¶76), a skilled artisan would have found it obvious for Diab to save power sometimes by foregoing motion-artifact-suppression processes, *e.g.*, Appx399-400 (¶92) (explaining it was "well known" that "'reducing the number of execution steps required' would

'allow[] either faster computation or lower power consumption, or both'" (quoting
Appx881 (10:62-65))).

> **b.    The Board Did Not Address Motivation To Combine
> in the Context of Apple's Unaddressed, Partial-
> Suspension Obviousness Arguments**

Masimo is wrong (RB 66-67) that the Board made any motivation to
combine finding supporting affirmance.  Despite Apple's argument that a skilled
artisan would have found it obvious to "forego[] motion artifact suppression
processes when informed of no motion" even if other components of the module
remain active, Appx2004 (7:16-18); *see also* Appx84-85; Appx1689-1690;
Appx2006-2009 (9:13-19, 11:9-12:15), the Board never made factual findings
concerning that argument, Appx23-32; BB 45-51.  Thus, there is no relevant
motivation-to-combine finding for Apple to challenge.

Examining the portion of the Board's decision Masimo cites confirms that it
confined its analysis to whether a skilled artisan would bodily incorporate
Amano's teaching of suspending processes into Diab by suspending ***the entire
motion artifact suppression module***.  *See* RB 66-67 (citing Appx29-30).
Specifically, the Board found that Diab "requires" the module's operation "to
produce a clean plethysmograph waveform" and characterized Apple's argument
solely as whether a skilled artisan "would, nevertheless, suspend" the entire
module.  Appx30.  This does not provide the necessary evidence-supported

explanation refuting Apple's argument that a skilled artisan applying ordinary skill would seek to save power using more modest reduction in processing—i.e., suspending processes "that deal with motion artifact suppression" even if other processes within the module that are "not fully devoted to artifact suppression" were retained.  Appx2006 (9:13-19); *see also* Appx84-86; Appx371-374 (¶¶53-55); Appx398-400 (¶¶91-93); Appx1689-1690; Appx2004 (7:16-18); Appx2008-2009 (11:9-12:15).

Moreover, the Board's underlying factual findings regarding Diab's and Amano's disclosures do not support nonobviousness over Apple's partial-suspension arguments.  The Board focused on Diab's ability to create a clean plethysmograph waveform.  Appx29-30.  Even assuming that a skilled artisan would have found it necessary to retain this output in the combination, the Board never addressed whether a skilled artisan could nevertheless obtain such a waveform while eliminating processes "fully devoted to [motion] artifact suppression."  Appx2006 (9:13-19); *see also* BB 34-41; Appx649 (9:18-21); Appx668 (48:6-9, 47:52-54).

The Board's remaining findings merely parrot Dr. Madisetti's assertions about Diab and Amano having "different processing algorithms that result in different outputs that are not directly applicable to each other."  Appx29-30 (quotation marks omitted).  However, as detailed above, these findings provide no

25

basis for escaping obviousness under *KSR*. A skilled artisan is "not an automaton" and would be motivated to apply "a technique [that] has been used to improve one device" to similar devices by applying ordinary skill. *KSR*, 550 U.S. at 417, 421.

## B. Apple Did Not Limit Its Obviousness Case to Suspending Diab's Entire Motion Artifact Suppression Module

Unable to rebut Apple on the merits, Masimo spends nearly all of its response arguing that Apple never raised its partial-suspension argument at the Board. RB 54-65. The record contradicts Masimo's contention. *E.g.*, Appx84-86; Appx371-374 (¶¶53-55); Appx378-379 (¶¶61-62); Appx398-400 (¶¶91-93); Appx1689-1690; Appx2004 (7:16-18); Appx2006 (9:13-19); Appx2008-2009 (11:9-12:15).

To be clear, Apple does not dispute that it *also* argued to the Board that suspending Diab's entire motion artifact suppression module would have been obvious. BB 41; Appx83-85; Appx668 (47:52-54). But Apple never limited its obviousness arguments to that theory, and the Board therefore erred by confining its analysis to only wholesale suspension of the module. BB 45-54.

### 1. Apple's Petition: The Combination Would Reduce Processing and Thus Power Consumption When No Motion Is Detected

Apple's petition explains that Diab discloses "additional processing for motion artifact suppression." Appx84-85. Apple further asserted that the Diab-Amano combination renders the "transitioning" limitation obvious because a

skilled artisan "would have found it obvious and straightforward" to "reduce

calculation time and power consumption . . . if motion is not detected" by

processing the signals "without motion artifact suppression"—i.e., foregoing this

"additional" processing.  Appx86 (cleaned up); Appx115-116.  Apple supported

this theory with expert testimony that it was "well known" in the art that reducing

processing would reduce power consumption.  Appx398-400 (¶¶91-93); *see also*

Appx368-369 (¶50); Appx371-374 (¶¶53-55); Appx378-379 (¶¶61-62).  Apple's

expert further testified that adapting Diab to take advantage of this widely-

understood concept would be "straightforward and obvious."  Appx364-365 (¶¶43-

44); Appx368-369 (¶50); Appx371-374 (¶¶53-55).

Although Apple additionally asserted that it would have been obvious to

suspend Diab's motion artifact suppression "module," nothing about Apple's

theory of obviousness turned on whether the ***entire*** module's operations were

suspended rather than just processes devoted to "motion artifact suppression."

Appx84-86.  Thus, Apple had no need to explicitly draw this distinction in its

petition.  Nevertheless, Apple specifically annotated Figure 21 of Diab—showing

"the operations of the motion artifact suppression module"—indicating that only

***part*** of the module represented this "additional processing for motion artifact

suppression."  *See* Appx85; Appx1689; *see also* Appx648 (8:18-20); BB 52 & n.1.

Masimo complains about how Apple's opening brief adapts annotated

27

Figure 21.  BB 52; RB 63-65.  The differences in annotations are plainly stylistic, not substantive.  Both figures show that the "[a]dditional processing for motion artifact suppression" encompasses the same components of the module and does not encompass the traditional DC removal and bandpass filtering blocks.  Appx85; BB 52.  Apple's opening brief merely presents the same concept more clearly, which hardly constitutes a "significant shift in arguments."  Appx83-86; RB 63; *see also Chamberlain Grp. v. One World Techs., Inc.*, 944 F.3d 919, 924-25 (Fed. Cir. 2019) ("Parties are not barred from elaborating on their arguments on issues previously raised."); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370-71 (Fed. Cir. 2002).

Thus, from the outset of the case, Apple's obviousness theory encompassed the possibility of some processing occurring inside the motion suppression artifact module in the modified device of Diab.

### 2.     Apple Properly Responded to Masimo's Arguments by Clarifying that the Motion Artifact Suppression Module Need Not Be Suspended Entirely

Masimo's patent owner response argued that a skilled artisan would not "'suspend and not execute' Diab's motion artifact suppression module 580 because the module is necessary to generate [a] clean plethysmograph waveform." Appx1299.  Apple was entitled to respond to that argument.  *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697, 705-07 (Fed. Cir. 2020); 37 C.F.R. § 42.23(b).

Most pertinent here, Apple responded that the combination could generate a clean plethysmograph waveform in the absence of motion using only a subset of its motion artifact suppression module—*i.e.*, the "DC removal and bandpass filter" modules—using "traditional filtering techniques."  Appx1687; Appx1689-1690. Apple further explained that the motion artifact suppression module would "operate differently depending on whether motion is detected," reproducing the annotated version of Figure 21 from its petition to illustrate that the "DC removal" and "bandpass filter" blocks could be used to generate a clean plethysmograph waveform even as the device suspended its "additional processing for motion artifact suppression" absent motion.  Appx1688-1690.  Apple supported this argument with uncontradicted testimony by Dr. Anthony that "if motion is not present," the device would not "need to remove it to generate the clean plethysmograph signal."  Appx1686-1687; Appx1521-1522 (68:15-69:6).  At the Board, Masimo never argued this responsive argument was somehow improper.

Masimo complains that Apple did not use "the word 'subset'" in this responsive argument.  RB 55.  But one thrust of Apple's responsive argument was that some components of the motion artifact suppression module (the DC removal and bandpass filter blocks) could be used to generate a clean plethysmograph waveform in the absence of motion even as other components were suspended. Appx1686-1690.  These assertions, particularly when read together with the

29

broader theory of Apple's petition, fairly put Masimo and the Board on notice of

Apple's obviousness argument, which is sufficient to preserve the argument. *E.g.*,

*Nelson v. Adams USA, Inc.*, 529 U.S. 460, 470 (2000) ("[I]ssues must be raised in

lower courts in order to be preserved . . . [but] this principle does not demand the

incantation of particular words; rather, it requires that the lower court be fairly put

on notice as to the substance of the issue."); *Wm. Wrigley Jr. Co. v. Cadbury

Adams USA LLC*, 683 F.3d 1356, 1360 n.3 (Fed. Cir. 2012); *CCS*, 288 F.3d at

1371.

     Apple did more than necessary, however, by further developing this same

argument at the hearing. Apple explained that a skilled artisan "would find it

obvious" for Diab's motion artifact suppression module to "forego[] motion

artifact suppression processes when informed of no motion." Appx2004 (7:8-24).

Apple added that "the motion artifact suppression module of Diab ***has components

whose functions*** . . . are useful for motion suppression" but also "***has other

components***" that "process data regardless of motion." Appx2005 (8:8-14). Then,

Apple argued that "the obviousness theories that have been set forth suggest that

***either*** you shut down that module . . . all together ***or*** you shut down at least the

portions of processing that are devoted to motion suppression." Appx2005 (8:16-

20). Apple emphasized that a skilled artisan "would find it obvious to suspend

performance of processes . . . that deal with motion artifact suppression in the

absence of motion" but that "to be clear" the module has other "sub-components" including "a DC band filter and a bandpass filter" that are "not fully devoted to artifact suppression." Appx2006 (9:10-22).

Taken as a whole, the record establishes that Apple more than sufficiently raised its partial-suspension argument to the Board. Appx83-86; Appx364-365 (¶¶43-44); Appx368-369 (¶50); Appx371-374 (¶¶53-55); Appx378-379 (¶¶61-62); Appx398-400 (¶¶91-93); Appx1521-1522 (68:15-69:6); Appx1686-1690; Appx2004-2006 (7:8-24, 8:8-20; 9:10-22). The Board therefore violated the APA and erred as a matter of law by not addressing it in its final written decision, and the case should be remanded for the Board to make findings concerning the remainder of the challenged claims. BB 48-51; *Andrea*, 949 F.3d at 707.

### C.    Apple Did Not Rely on Inherency

The Board also erred by incorrectly applying an inherency standard to Apple's obviousness argument. BB 54-61. Masimo does not dispute the limited role inherency plays in an obviousness analysis, *see Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194-96 (Fed. Cir. 2014); instead, it attempts to blame Apple for the Board's error by asserting that Apple "relied on inherency." RB 69. That is not a reasonable reading of Apple's arguments.

Nowhere did Apple—in its petition, reply, or at the hearing—ever assert that reducing processing would "inherently" or "necessarily" reduce Diab's power

31

consumption.  Appx83-86; Appx1686-1690; Appx2004-2008.  Rather, Apple

relied on Dr. Anthony's opinion that it would be "straightforward" and "obvious"

for a skilled artisan "to combine Diab with Amano to manage power consumption

by reducing calculation time and power consumption, as suggested by Amano, if

motion is not detected."  Appx368-369 (¶50) (quotation marks omitted); Appx371-

374 (¶¶53-55); Appx80-81; Appx84-86.  In other words, Apple asserted that

modifying Diab to use Amano's power management techniques required only

ordinary skill, as confirmed by Dr. Anthony's testimony that it was within a skilled

artisan's "common background knowledge" that "reducing the amount of

processing by suspending operations reduces power consumption."  Appx398-400

(¶¶91-93); *see also* Appx83-86; Appx114-115.[11]  That is an obviousness argument,

not an inherency one.

　　The Board's reliance on Dr. Madisetti's opinions confirms its legal error.

Appx30-32.  Dr. Madisetti never addressed a skilled artisan's ability to adapt Diab

to save power when no motion is detected by applying ordinary skill and creativity;

his opinions focused on the particular "structure[]" and algorithms of Diab assume

a skilled artisan would bodily incorporate Amano's teachings into Diab, which is

---

[11] Because Apple alleged obviousness, it invoked the "reasonable expectation of
success" standard even where Apple did not recite it *in haec verba*. *E.g.*, Appx83-
86; RB 69.  Apple satisfied that standard with Dr. Anthony's unrebutted testimony
that the proposed modification would be straightforward to a skilled artisan.
Appx368-369 (¶50); Appx372-374 (¶¶54-55).

not the correct legal standard for obviousness.  Appx1396-1397 (¶¶76-77);

Appx1400-1402 (¶¶87-90); Appx1774 (59:10-20); *see also In re Keller*, 642 F.2d

413, 425 (CCPA 1981).

For this independent reason, the Court should vacate the Board's conclusion

regarding Diab's power consumption in view of Amano.

## <u>CONCLUSION</u>

Apple asks this Court to vacate the Board's decision.


Dated:  February 8, 2023              Respectfully submitted,

                                       */s/ Lauren A. Degnan*
                                      Lauren A. Degnan
                                      W. Karl Renner
                                      Christopher Dryer
                                      Michael J. Ballanco
                                      Laura E. Powell
                                      FISH & RICHARDSON P.C.
                                      1000 Maine Ave., Suite 1000
                                      Washington, DC 20024
                                      Telephone: (202) 783-5070

                                      *Attorneys for Appellant Apple Inc.*

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that on February 8, 2023, I electronically filed the foregoing

**APPLE INC.'S REPLY BRIEF** of appellant using the Court's CM/ECF filing

system.  Counsel for appellee were electronically served by and through the

Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).


*/s/ Lauren A. Degnan*
Lauren A. Degnan

## <u>CERTIFICATE OF COMPLIANCE</u>

The **REPLY BRIEF** of appellant is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b).  The brief contains 6999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.


Dated:  February 8, 2023                    */s/ Lauren A. Degnan*
                                            Lauren A. Degnan